UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00240-RJC

| CECILY BERRY, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 11, 13). Having fully considered the written arguments, administrative record, and applicable authority, the Court grants Plaintiff's Motion for Summary Judgment and remands this matter for further proceedings consistent with this Order.

## I.  BACKGROUND

Plaintiff Cecily Berry ("Ms. Berry") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Ms. Berry filed concurrent applications for disability insurance benefits and supplemental security income under Title II and Title XVI on October 5, 2015, with an alleged onset date of May 1, 2015. (Tr.[1] 10). At the initial hearing, the ALJ found Ms. Berry was not disabled. (Tr. 95–126). The Appeals Council remanded to cure a procedural defect raised by Ms. Berry's constitutional challenge under the Appointments Clause. (Tr. 222–23). Thereafter, a different ALJ held a new hearing. (Tr. 58–94). Ms. Berry is appealing the ALJ's decision from the most recent hearing.

---

[1] Citations to "Tr." throughout the Order refer to the administrative record at DE 9.

In denying Ms. Berry's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 14–50). At step one, the ALJ found that Ms. Berry had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 17). At step two, the ALJ found that Ms. Berry had the following combination of severe impairments: major depressive disorder, attention deficit hyperactivity disorder with secondary insomnia, diabetes mellitus type II with secondary diabetic peripheral neuropathy, morbid obesity with a body mass index of 45-plus, a history of cervical spine herniation and stenosis status post anterior cervical disc fusion, and bilateral ankle degenerative changes. (*Id.*). The ALJ also found that Ms. Berry had the following non-severe impairments: allergic rhinitis, acute pancreatitis with secondary dehydration, vomiting and nausea, a viral upper respiratory infection, pyelonephritis, cigarette nicotine dependence, marijuana usage, hypothyroidism, onychomycosis, hypercholesterolemia, non-proliferative diabetic retinopathy, keratoconjunctivitis, ocular hypertension, conjunctivochalasis, ulcerative blepharitis of the left upper eyelid and dry eyes, left breast cysts, migraine headaches, and psoriasis. (*Id.* at 18). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 21–27). Before moving to step four, the ALJ found that Ms. Berry had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is to have the option to alternate siting and standing every hour while being off-task up to five-percent of the day. Furthermore, she is limited to occasional pushing and pulling with her bilateral upper and lower extremities. She is limited to the frequent climbing of ramps and stairs, and balancing. Additionally, she is limited to the occasional climbing of ladders, ropes and scaffolds. She is limited to the frequent handling and fingering with her non-dominant left upper extremity and she is able to tolerate occasional exposure to hazards such as heights and unprotected machinery parts. She is able to apply commonsense understanding to carry out detailed, but uninvolved instructions and make work decisions consistent with such ability. She is capable of working in a goal oriented setting that does not require a consistent face [sic] pace-no conveyor belt/assembly line work. She is capable of frequent interaction with the public, co-workers and supervisors. She is able to adapt to

2

occasional changes in the work setting and duties.

(*Id.* at 27). At step four, the ALJ found that Ms. Berry could not perform any past relevant work but found at step five that Ms. Berry could perform jobs that exist in significant numbers in the national economy. (*Id.* at 48–50).

After exhausting her administrative remedies, Ms. Berry brought the instant action for review of Defendant's decision denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the

3

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises three challenges: (1) the ALJ failed to explain the RFC limitation for being off task up to five percent of the day, (2) the ALJ misevaluated the medical opinion of consultative examiner Dr. McNulty, and (3) the ALJ misevaluated the medical opinions of the initial and reconsideration state agency psychological consultants. Remand is warranted based on Plaintiff's first challenge.

Plaintiff argues that the ALJ erred in determining her RFC when, in concluding that Plaintiff would be off task up to five percent of an eight-hour workday, the ALJ did not provide a logical bridge between the evidence and the off-task calculation. A claimant's RFC is an assessment of the "most [an individual] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment requires a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). In particular, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*

4

*v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). "The second component, the ALJ's logical explanation, is just as important as the other two." *Id.* Accordingly, "[t]o pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Cmm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (internal citation omitted). In regard to the off-task percentage, while "an ALJ is not required to determine a percentage of time off-task . . . where, as here, the evidence substantiates difficulty with sustained concentration and the ALJ renders a conclusion regarding a precise percentage, the ALJ must explain and support that conclusion with substantial evidence." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-cv-01252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018). Many courts in the Fourth Circuit[2], including this Court, thus require the ALJ to explain how he or she arrived at the off-task percentage.

---

[2] *Bibey v. Saul*, No. 1:19-CV-02690-JMC, 2020 WL 7694552, at *3 (D. Md. Dec. 28, 2020) ("In this case, the ALJ explored off task limitations during the hearing, but failed to explain how she ultimately determined that Plaintiff would be off task five percent of an eight-hour workday."); *Petry v. Comm'r, Soc. Sec. Admin.*, SAG-16-00464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (requiring specific explanation as to how the ALJ's percentage was calculated, as one percent increase could preclude competitive employment); *Greene v. Saul*, No. 1:20-CV-96-MR-WCM, 2021 WL 3074422, at *3 (W.D.N.C. June 17, 2021), report and recommendation adopted, No. 1:20-CV-00096-MR-WCM, 2021 WL 3072461 (W.D.N.C. July 20, 2021) ("While the ALJ explained why Plaintiff would be off task, he did not explain how he determined the specific percentage of time Plaintiff would be off task . . . i.e., he made it up out of whole cloth."); *Richardson v. Saul*, No. 4:19-CV-00128-FL, 2020 WL 3816317, at *6 (E.D.N.C. June 9, 2020), report and recommendation adopted, 2020 WL 3799344 (E.D.N.C. July 7, 2020) ("ALJ Anderson found that Richardson would be off-task due to pain and medication side effects. While this explains why she would be off-task, it does nothing to inform a reviewing court of how ALJ Anderson arrived at the figure–nine percent of the workday– or what evidence in the record supports this calculation"); *Marshall v. Saul*, No. 5:20-CV-55-LF, 2020 WL 7390486, at *5 (E.D.N.C. Nov. 19, 2020) ("Several courts within the Fourth Circuit, including this one, have found that the ALJ's failure to explain the determination that a claimant would be off task for a certain percentage of time left the court unable to conduct a meaningful review of whether the determination was supported by substantial evidence.")(collecting cases); *McNeely v. Saul*, No.: 2:20-cv-00158, 2020 WL 5648214 at *9 (S.D. W. Va. Sept. 4, 2020)(collecting cases); *Keith L. v. Saul*, No. CV DLB-20-930, 2021 WL 1723084, at *2 (D. Md. Apr. 30, 2021) ("The ALJ does not explain why plaintiff's pain would cause him to be off task five percent of the workday, as opposed to ten, fifteen or twenty percent of the workday. Without a narrative explanation of how the evidence supports the ALJ's seemingly arbitrary conclusion that plaintiff would be off-task five percent of the workday, the Court cannot engage in meaningful substantial evidence review."); *Cassandra G. v. Kijakazi*, No. CV DLB-20-1302, 2021 WL 3146036, at *2 (D. Md. July 26, 2021) ("Because the ALJ failed to explain how the record supported her conclusion that a ten percent off-task limitation accounted for plaintiff's ability to remain on task, remand is necessary."); *Cf. Painter v. Berryhill*, No. 2:17-CV-04435, 2018 WL 5904510, at *11-12 (S.D.W. Va. Oct. 19, 2018), report and recommendation adopted, 2018 WL 5891750 (S.D.W. Va. Nov. 9, 2018) (finding that a five percent off task limitation was supported by substantial evidence when it was based on Claimant's specific testimony regarding the frequency and length of her restroom breaks and other evidence that collectively tied into the five percent figure).

> Other than this cursory, one-sentence determination, the ALJ did not expound upon his reasoning for this conclusion. Nowhere in the rest of the ALJ's discussion of Plaintiff's RFC—indeed, nowhere in the entire ALJ decision—does he identify or explain his reasoning as to why Plaintiff's stress translates into her being off task nine percent of the time. In the absence of explanation, the Court is left to pontificate on where the ALJ came up with the nine-percent figure and why this limitation adequately accounts for Plaintiff's limitations. This is the exact type of guesswork that Mascio and its progeny prohibit this Court from doing.

*Kennedy v. Berryhill*, No. 3:18-CV-00405-RJC, 2019 WL 3664936, at *4 (W.D.N.C. Aug. 6, 2019).

Here, the ALJ included the limitation for being off task up to five percent of the work day in the RFC. The ALJ then provided a thorough summation of the record evidence, which included evidence that Plaintiff may have some difficulty with maintaining concentration. However, the ALJ failed to explain how she arrived at the five percent off task number based on the record evidence. In fact, other than providing the five percent limitation in the RFC, the ALJ never discussed the off-task percentage anywhere else in her opinion. Tellingly, Defendant does not argue that the ALJ explained how she arrived at the the off-task percentage, and instead generally argues that the ALJ carefully examined all the medical evidence and arrived at the RFC based on that evidence.

Accordingly, it is impossible for this Court to determine whether the RFC the ALJ assigned Plaintiff adequately accounts for her limitations. It is well established that when an ALJ goes "straight from listing evidence to stating a conclusion," meaningful review is frustrated. *Thomas*, 916 F.3d at 311. Here, without a narrative discussion laying out the connection between the evidence and the conclusion of the five-percent off-task limitation, the Court is left to guess as to how the ALJ reached this finding. This sort of guessing game is at the crux of what *Mascio* prohibits; as such, the Court will not speculate as to why five percent was the magic number and

rather, finds remand appropriate.³ *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (rebuking an ALJ to "[s]how [his] work" and explain the RFC assessment).

By ordering remand, the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 11), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (DE 13), is **DENIED**; and
3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 12, 2022

Robert J. Conrad, Jr.
United States District Judge

---

³ This is not a harmless error as the vocational expert testified that being off task greater than fifteen percent would preclude employment. (Tr. 91); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001).

7